## LORENZA VARGAS V. THE STATE.

No. 17257.    Delivered February 27, 1935.

The opinion states the case.

*Max Coleman,* of Lubbock, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

LATTIMORE, JUDGE.—Conviction for unlawfully carrying a slung-shot; punishment six months in the county jail.

Several witnesses for the State testified that about eleven o'clock in the daytime they arrested appellant and another Mexican walking along the road or street in north Lubbock. Appellant had under his arm a bundle which, upon investigation, was found to contain a new leather jacket.  Noticing a bulk of something under appellant's clothes, this was found to contain what three officers called a slung-shot, being a piece of steel or metal enclosed in strips of horse-hide or leather, one end tapering to where by strips or straps same could be fastened to the wrist.  One officer testified that he never had heard such weapon called a slung-shot. We think the evidence amply sufficient to justify the conclusion reached by the jury, that

appellant was guilty. He was given a punishment considerably above the minimum. What caused this is no concern of ours,—and would not call for a reversal of the judgment unless there be a showing of some erroneous procedure of such materiality as might have been reasonably calculated to create prejudice against the accused, aside from the fact of his guilt of the offense charged,—and to which might be attributed the punishment fixed.

The weight of the slung-shot is not shown, nor was there any testimony as to its deadly character, one officer testifying, however, that such weapons were used for purposes of offense and defense. Apparently such weapon would not be as dangerous as a pistol. Many carriers of the latter weapon, as appears from our records, receive much less punishment than was here inflicted.

While a witness for himself appellant was cross-examined regarding the leather jacket had by him when arrested. He said he bought it from an unknown white man who brought it to his house at night and sold it to him for three dollars. Regarding the slung-shot, he said he was at a gathering of Mexicans, and when they dispersed he observed the weapon lying on the floor, and thought it belonged to a man named Joe Vargas, whom he knew, and he picked it up intending to take it to Joe Vargas. Appellant admitted that he had previously pleaded guilty to stealing and vagrancy.

In his closing argument to the jury the State's attorney said to them that in his judgment appellant was one of the most dangerous thugs in the city of Lubbock. This was excepted to as being merely a conclusion of the attorney, unsupported by any testimony showing that appellant was a thug, and highly prejudicial and inflammatory. We find in this record no testimony showing that appellant was a thug. The statement referred to as being the judgment of the State's attorney, would appear to be based,—if having any support,—on matters not before the jury. Again in said closing argument the State's attorney said: "I believe he lied when he told you he was returning that slung-shot to its owner."

Again the State's attorney in said argument used the following language: "In my judgment, according to his own admissions, he was getting ready to use that slung-shot on somebody and perhaps kill some good man or steal something." If we understand this record, appellant made no admission that he was going to use the slung-shot either to kill anybody or to aid him in stealing property. The closing argument of the

State is a powerful weapon in its hands. Men on the jury unused to court procedure, not quite sure what should be remembered as the case proceeds,—hear their county attorney,—most frequently as in this case, a highly esteemed officer, in the closing moments of the argument,—tell them what has been said,—what the accused had admitted, and his statements are properly accorded weight. That the argument in this case was beyond the testimony seems plain, and the court approved the bill of exception without qualification. If the jury were led to believe from this argument that, in the opinion of their county attorney, appellant was one of the worst thugs in Lubbock when no testimony had been offered to show this, and if they were thus led to believe that appellant was about to kill some good man, or use this slung-shot to accomplish a theft, because their prosecuting attorney assured them of this fact,—this could easily account for the increased penalty above the minimum, which they might have otherwise inflicted.

The testimony elicited from appellant by the State that he had pleaded guilty to theft, was allowable only as affecting his credibility as a witness, and same should not be used for any other purpose; especially it should not be used in argument to induce a jury to give a heavy penalty. Appellant was plainly guilty of carrying the slung-shot in question. He was carrying it in the daytime while walking along a public street. This was the extent of his offense. If the State had contented itself with making a showing of these facts, the jury might have given him the penalty which was in fact inflicted, but in the opinion of this court there exists too great a danger that such penalty was influenced by the erroneous argument for the State to lead us to let the conviction stand.

From the errors mentioned the judgment is reversed and the cause is remanded.

*Reversed and remanded*