John Gilbert CARTER, Jr., Appellant,

v.

The STATE of Texas, Appellee.

No. 66183.

Court of Criminal Appeals of Texas, Panel No. 3.

April 1, 1981.

Rehearing Denied May 13, 1981.

Brenda Hight and Kerry P. Fitzgerald, Dallas, for appellant.

Henry Wade, Dist. Atty., John D. Nation, Earl Cross and Balon Bradley, Asst. Dist. Attys., Dallas, Robert Huttash, State's Atty., Austin, for the State.

Before TOM G. DAVIS, McCORMICK and TEAGUE, JJ.

## OPINION

TOM G. DAVIS, Judge.

Appeal is taken from a conviction for driving while intoxicated. Art. 6701*l*–1, V.A.C.S. After finding appellant guilty, the jury assessed punishment at two years and a fine of $500.00.

In his second ground of error, appellant contends that the court erred in overruling an objection to alleged improper jury argument. He maintains that the argument was improper because it was not based upon evidence in the record.

The record reflects that appellant had previously been convicted of murder without malice in 1972. That conviction arose from appellant's actions in driving while intoxicated and striking a bicycle ridden by John M. Johnson who died as a result of injuries received in the accident. While commenting on this prior conviction during jury argument, the prosecutor stated as follows:

"MR. CROSS: . . .

"Now Johnny Johnson didn't have his Christmas with his mother this past Christmas because of this man sitting right there that got on the witness stand and told you his story—

"MS. HIGHT: Your Honor, we object again to his comments that are outside the record and offered as testimony on punishment.

"THE COURT: What is outside the record?

"MS. HIGHT: Johnny Johnson and his mother. There is no evidence that he had a mother who is—

"THE COURT: Ms. Hight, except for one situation, I don't know how anybody got here except without having a mother. So I'll overrule your objection.

"MS. HIGHT: Your Honor, he is speaking of Christmas this past year, which is outside the record and there is no evidence, and we will—

"THE COURT: That we had a Christ-mas? Overruled."

■ An objection to jury argument must be specific and pressed to the point of pro-curing a ruling or the objection is waived. *DeRusse v. State*, Tex.Cr.App., 579 S.W.2d 224; *Cain v. State*, Tex.Cr.App., 549 S.W.2d 707. A review of counsel's objections and the rulings secured thereon from the above quoted portion of the record reveals that counsel obtained an adverse ruling as to two distinct matters. Those matters where that Johnson had a mother and that there had been a Christmas in the year preceding trial in the instant cause. The record fails to disclose that there was evidence of these matters produced at trial.

■ It is the duty of counsel to confine their arguments to the record. *Irving v. State*, Tex.Cr.App., 573 S.W.2d 5. How-ever, counsel may in argument draw from facts in evidence all inferences that are reasonable, fair and legitimate. *Griffin v. State*, Tex.Cr.App., 554 S.W.2d 688; *Jack-son v. State*, Tex.Cr.App., 529 S.W.2d 544. Likewise, an argument, although outside the record, may be based upon matters of common knowledge. *Salinas v. State*, Tex. Cr.App., 542 S.W.2d 864 (fact that being an informer is a hazardous profession); *Ra-mirez v. State*, 163 Tex.Cr.R. 491, 293 S.W.2d 653 (fact that some marihuana finds its way into the possession of high school children); *Banks v. State*, 89 Tex.Cr.R. 438, 230 S.W. 994 (fact that whiskey is an intoxi-cating liquor); *Borrer v. State*, 83 Tex.Cr.R. 198, 204 S.W. 1003 (fact that a bullet is deflected from a straight course by striking an object).

■ We find no error in the court over-ruling counsel's objections to the argument complained of in this ground of error. It was a reasonable and fair inference that Johnson, as a human being, had a mother. Likewise, there was no error in the prosecu-tor stating that there had been a Christmas in the year preceding the trial. At the time of trial, January 2, 1980, it was a matter of

common knowledge that there had been a Christmas in 1979. Appellant's second ground of error is overruled.

In his first ground of error, appellant contends that the court erred in failing to grant his motion for mistrial due to improp-er jury argument. He maintains that the argument was improper because it was not based upon evidence in the record.

The record reflects that in referring to the victim of the bicycle accident, the prose-cutor stated:

"Now we're here to determine what your verdict is going to mean. Now counsel gets up here before you and she pleads with you to give this man probation, something to shock him.

"Well, if you'll remember back when he ran over this little child out there on that bicycle—"

Counsel's objection was sustained and the court instructed the jury to disregard the words "small child."[1] Appellant's motion for mistrial was denied. There is no evi-dence in the record as to the age of the bicycle victim, Johnson.

■ Prosecutorial argument which is outside the record is improper. *Romo v. State*, Tex.Cr.App., 593 S.W.2d 690. In or-der for an improper jury argument to con-stitute reversible error, it must be either extreme or manifestly improper or inject new and harmful facts. *DeBolt v. State*, Tex.Cr.App., 604 S.W.2d 164. Usually, any harm resulting from an improper jury argu-ment by the prosecutor is obviated when the objection is sustained and the jury is instructed to disregard the argument. *De-Bolt v. State*, supra; *Redd v. State*, Tex.Cr. App., 578 S.W.2d 129.

Appellant's reliance on *Walker v. State*, 610 S.W.2d 481, Tex.Cr.App. (1980) is mis-placed. In that case, the defendant was on trial for murdering his son-in-law. The State elicited evidence, in direct violation of a motion in limine which had been granted,

---

[1] Although the argument referred to Johnson as a little child, counsel's objection was ad-dressed to use of the term "small child."

as to the details of the defendant's prior conviction for incest. Those details revealed that the victim of the incest had been the defendant's daughter, wife of the deceased in the murder prosecution, who had been fifteen years of age at the time of the incestuous conduct.

A careful reading of *Walker* makes it clear that the conviction was reversed due to deliberate prosecutorial misconduct. The Court stated:

"In introducing evidence of prior convictions as against an accused, the State is not permitted to allude to or in any way bring before the jury the facts surrounding the commission of the offense forming the basis for such a conviction. (Citations omitted). The prosecutor's question violated this precept by informing the jury that the victim of the incest was a daughter of appellant—a fact that could not be gleaned from a perusal of the judgment and sentence which were before the jury. Moreover, improper injection of the details appears to have been done deliberately, considering a prior effort, the limine order, the colloquy and the later follow up questions.

"We believe that the misconduct was so clearly calculated to inflame the minds of the jury and was of such character so as to suggest the impossibility of withdrawing the impression produced on their minds."

■ In the instant case, there is no allegation of or support for a claim of deliberate prosecutorial misconduct. The argument complained of in the instant case was improper because there was no evidence as to the age of the bicycle victim. Although the argument injected new facts, we find that the harmful effect of those facts was obviated by the trial court's prompt instruction for the jury to disregard the words "small child."

Appellant speculates that the jury assessed the maximum punishment in the instant case because of the reference to a "little child" as the victim of appellant's murder without malice conviction. Such an assertion is based upon a tenuous assumption at best. Appellant was driving while intoxicated at the time the bicycle victim was killed. He pled guilty in that cause and was given a probated sentence. In the instant case, appellant was driving while intoxicated at the time he caused a collision involving two automobiles.

It simply appears that the jury did not feel that appellant deserved another probated sentence in view of his conduct following his first probated sentence. We find no error in the trial court overruling appellant's motion for mistrial based on improper jury argument.

In his third ground of error, appellant contends that the court erred in failing to grant his motion for a mistrial due to an improper question by the prosecutor. He maintains that the question was improper because it called for an answer which was hearsay.

James Steel testified that on July 20, 1979, he observed appellant driving in an erratic manner is Dallas. Steel observed appellant's car involved in a collision with a car driven by L. Sheldon Lord. Following the accident, appellant got out of his car. Steel related that based upon his observations, appellant was intoxicated at the time of the accident. The other driver, Lord, did not testify at trial.

The questions appellant now complains of are as follows:

"Q. Did you talk to Mr. Lord concerning this Defendant's condition out there at the scene?

"A. Yes.

"Q. Did he share your same opinion?

"A. Yes."

Following these questions and answers, appellant's objection was sustained and the jury was instructed to disregard the question and answer. Appellant's motion for mistrial was denied.

■ Generally, an error in asking an improper question or in admitting improper testimony in a criminal proceeding may be cured or rendered harmless by its withdrawal or an instruction to disregard; except in extreme cases where it appears that

the question or evidence is clearly calculated to inflame the minds of the jury and is of such a character so as to suggest the impossibility of withdrawing the impression produced on the juror's minds. *Cavender v. State*, Tex.Cr.App., 547 S.W.2d 601; *Sheppard v. State*, Tex.Cr.App., 545 S.W.2d 816. We find that the questions and answers appellant now complains of were of such a character that the court's instruction to disregard was sufficient to cure the error.

We have reviewed the contentions advanced in appellant's pro se brief and would find them to be without merit.

The judgment is affirmed.

TEAGUE, Judge, dissenting.

A majority of this panel affirms this case, holding, among other things, that the prosecutor's jury argument did not constitute reversible error. I disagree, and will now tell the reader why.

I first object to the majority, in rather disingenuous fashion, by treating appellant's grounds of error seriatim, and by selectively quoting from the record, making it appear that only the most minor of damage may have been done to appellant by the prosecutor's unsupported and unfounded in fact arguments. That this appearance is a mirage is readily apparent from the record of the contested argument, presented whole. See, for example, infra, the continuation of the colloquy between the trial court and counsel as compared to what the majority says occurred.

Appellant was convicted of the misdemeanor offense of driving while intoxicated and a jury assessed his punishment at two years and a $500 fine, the maximum allowed by law.[1]

The facts of the case are relatively simple. The evidence at trial showed that a James L. Steel, while driving his automobile west on Lovers Lane in Dallas behind a white Opel stationwagon, later shown to be driven by appellant, observed appellant's automobile "weaving back and forth across the road and occasionally the driver would stop." "I think he stopped twice to yell something to people [pedestrians] on the other side of the road." While attempting to pass another automobile, appellant's stationwagon struck the rear bumper of the other automobile. After the vehicles stopped and all parties got out of their respective vehicles, appellant informed Steel and the driver of the other vehicle that: "I'm going to whip your ass either one at a time or both at the same time." At the scene, appellant also raised his hands in the air as though Steel and the other person, a Mr. Lord, who did not testify, had guns pointed toward him, but Steel testified: "And we were not even close to him." In Steel's opinion, appellant was intoxicated at the time. After his counsel finished examining Steel, appellant himself cross-examined and recross-examined the witness.

Police Officer Randall Ray Cobb of the University Park Police Department testified he received a dispatch call to go to Douglas and Lovers Lane in Dallas and after arriving at that location he talked with all three of the parties involved. In Cobb's opinion, the accident was classified as a "minor" due to the small amount of damage. "There was some scratches on the chrome bumper and some scuff marks on the rubber on the bumpers." In Cobb's opinion, appellant was intoxicated at the time in question. Appellant was also allowed to cross-examine and later to recross-examine Cobb after his counsel completed her cross-examination.

Appellant did not offer any testimony nor did he testify at the guilt-innocence stage of the trial. The jury, however, found him guilty of the charged offense.

Up to that point we have in my view an errorless trial. But then came the punishment hearing. The State, when asked if it had any evidence to offer, replied: "The State rests" [on the punishment hearing]. Appellant, however, chose to testify at the

---

1. The record reflects that prior to trial the prosecution offered appellant "a $250 fine and probation," apparently in exchange for a plea, but appellant apparently rejected the offer. See Art. 6701*l*–1, V.A.T.C.S.

punishment hearing and in my view the beginning of an error laden trial then developed from an error free trial.

Appellant, on cross-examination, was asked by the prosecutor about a prior murder by automobile conviction he received on April 28, 1972. He first declined to answer the question and attempted to take his "Fifth Amendment exemption." He was then ordered by the trial court, subject to contempt of court for failure to do so, to answer the question, and he did answer the question in the affirmative. The State, however, then had admitted into evidence, over objection, State's Exhibit No. 1, which consists of an indictment, judgment and an order suspending imposition of sentence and placing the defendant on probation for the murder by automobile conviction.[2] Because of the error that was later committed during jury argument, this indictment, in pertinent part, is here now set out:

> [defendant] . . . while intoxicated and while under the influence of intoxicating liquor, [did] drive and operate a motor vehicle, to wit, an automobile upon a public highway there situate, and did then and there in the execution of said unlawful act, through mistake and accident, kill *John M. Johnson, the driver and occupant of a bicycle* then and there in and upon said highway by then and there driving and causing the automobile so driven and operated by him the said John Gilbert Carter, Jr., to be driven into and against said bicycle so driven and occupied by the said *John M. Johnson.*[2A]

On re-direct examination, appellant also testified in reference to defendant's Exhibit No. 1, which is an instrument entitled "Order Setting Aside Judgment of Conviction Dismissing the Indictment and Discharging Defendant from Probation," which reflects appellant successfully completed his probation for the murder by automobile conviction. Apparently, appellant had *no other* admissible "prior criminal record" as none

was offered by the State. After counsel completed their examination and cross-examination of appellant, the trial court then allowed appellant to personally "state whatever else you want to in that regard." Appellant then personally made a few innocuous comments not pertinent here, regarding the prior conviction.

During argument, counsel for appellant made reference to the prior conviction but said nothing more than: "He did not have a trial, he pled guilty to a very unfortunate incident *in which a car bike collision resulted in the death of the rider of the bicycle.*"

The prosecutor then, almost immediately, in his jury summation, in my view, destroyed all of the work the police, his office, the trial court, counsel for appellant, and everyone else connected with the case had done in seeing that appellant not only had his day in court but received the fair trial the law requires he have.

The prosecutor argued and the record reflects the following:

> \*  \*  \*  \*  \*  \*

> Well, if you'll remember back *when he ran over this little child out there on that bicycle—*
> MS. HIGHT: Your Honor, we'll object. *There is no evidence at all that it was a small child, in fact, it was not.*[3]
> THE COURT: I sustain the objection about the word small child.
> MS. HIGHT: We'll request of the Judge to ask the jury to disregard?
> THE COURT: The jury will disregard the words, small child.
> MS. HIGHT: We will also request a mistrial.
> THE COURT: Denied.
> MS. HIGHT: Note our exception.
> MR. CROSS: Well whether he was small or not, killing that man didn't shock him any.

---

2. *This conviction was, of course, admissible at the punishment hearing in this cause.* See Art. 37.07, V.A.C.C.P.

2A. All emphasis is supplied throughout hereafter by the writer of this opinion unless otherwise indicated.

3. This is the "skunk" mentioned hereafter.

Later, during argument, counsel for the State further argued:

\* \* \* \* \* \*

Now *Johnny* Johnson didn't have his Christmas with his mother this past Christmas because of this man sitting right there that got on the witness stand and told you his story—[4]

MS. HIGHT: Your Honor, we object again to his comments that are outside the record and offered as testimony on punishment.

THE COURT: What is outside the record?

MS. HIGHT: *Johnny* Johnson and his mother. This is no evidence that he had a mother who is—

THE COURT: Ms. Hight, except for one situation, I don't know how anybody got here except without having a mother. So I'll overrule your objection.

MS. HIGHT: Your Honor, he is speaking of Christmas this past year, which is outside the record and there is no evidence, and we will—

THE COURT: That we had a Christmas? Overruled.

MS. HIGHT: No, Your Honor, that *Johnny* Johnson's mother had one.

Note our exception.

MR. CROSS: Well, there is one person that we all know didn't have a Christmas because this man run over him and killed him. . . .

The jury accepted, by its verdict, the prosecutor's plea for the maximum possible punishment provided by law.

Appellant, in his appeal, contends reversible error resulted when the prosecutor argued as set out above. The State responds, in part: "Only one arguable fact was presented, whether the deceased was a small child," and admits there is absolutely nothing in this record to support the assertion that the deceased in the prior cause was a "small child," other than: *"As the indictment stated that the deceased was the occupant of a bicycle, it was not unreasonable to assume that the deceased was a*

minor.*" The indictment of the prior conviction does not refer or make reference to the victim's age. The fact that a person rides a bicycle, even in 1972, and certainly now, does not, standing alone, justify the inference that person must be a small child. Older youths—and even older adults—are known to ride bicycles throughout our state; then and now.

As to the prior conviction, it reflects appellant received the minimum punishment of two years' probation, then provided by law, on April 28, 1972, which he successfully completed on April 29, 1974, almost six years prior to the trial of this cause.

If the prosecutor had contented himself with making a showing of the facts of the case, *together with the evidence of the prior conviction,* as they existed, the jury might very well have assessed the punishment it in fact inflicted, but in the view of this writer there exists too great a danger that such penalty was influenced by the erroneous "striped kitty" argument of the State.

Proper jury argument must fall into one of four areas to be upheld: (1) summation of the evidence; (2) reasonable deduction from the evidence; (3) answer to argument of opposing counsel and, (4) a plea for law enforcement. See *Todd v. State,* 598 S.W.2d 286 (Tex.Cr.App.1980) and cases cited therein. It is clear that the unsupported argument of the prosecutor that the victim of the prior offense was a small child does not fit into any of the approved categories. But even argument outside the approved areas does not constitute reversible error unless, in light of the record as a whole, the argument is extreme or manifestly improper *or injects new facts harmful to the accused into the trial proceeding which may affect guilt-innocence or punishment.*

Many years ago, this Court, speaking through Judge Lattimore, in *Vargas v. State,* 128 Tex.Cr.R. 139, 79 S.W.2d 860 (1935) said:

. . . The closing argument of the state is a powerful weapon in its hands. Men on the jury unused to court procedure, not

4. This is the "striped kitty" mentioned hereafter.

quite sure what should be remembered as the case proceeds, hear their county attorney, most frequently, as in this case, a highly esteemed officer, in the closing moments of the argument, tell them what has been said, what the accused had admitted, and his statements are properly accorded weight. That the argument in this case was beyond the testimony seems plain, and the court approved the bill of exceptions without qualification. If the jury were led to believe from this argument that, in the opinion of their county attorney, appellant was one of the worst thugs in Lubbock when no testimony had been offered to show this, and if they were thus led to believe that appellant was about to kill some good man, or use this slungshot to accomplish a theft, because their prosecuting attorney assured them of this fact, this could easily account for the increased penalty above the minimum, which they might have otherwise inflicted.

As to the trial court's sustaining of the objection made and instructing the jury to disregard the words "small child," I would hold that the withdrawal of those words from the jury's consideration did not cure the error inherent in this direct reference, without any factual basis to support it, to the alleged age of the previous victim. The argument of the prosecutor was absolutely improper and the trial court's instruction to disregard was not sufficient to have removed the prejudice it created. However, I do not reach the ground of error concerning this part of the objectionable jury argument. In light of this first attempt to throw the proverbial skunk in the jury box, see *Dunn v. United States*, 307 F.2d 883, 886 (5th Cir. 1962), I am constrained to examine more closely the "striped kitty" which the jury was permitted to take with it to the jury room when the trial court overruled appellant's objection to the refer-

ence of "Johnny" not spending Christmas with his mother. I find this aggravated the original error to the point of making the jury argument reversible error.

I subscribe to and admonish counsel for both the State and the accused to follow what then Comm. Krueger of this Court said years ago in *Pena v. State*, 129 S.W.2d 667 (Tex.Cr.App.1939).

> . . . The object and principal purpose of an argument to the jury, as we understand it, is to aid and assist them in properly analyzing the evidence and arrive at a just and reasonable conclusion based on the evidence alone, and not on any fact not admitted in evidence. Nor should resort be had in argument to arouse the passion or prejudice of the jury by matters not properly before them.[5]

Recently, in *Walker v. State*, No. 63,019, State's Motion for Leave to File Motion for Rehearing denied without written opinion on 2/4/81, a conviction was reversed because the State revealed to the jury, *in cross examining the accused*, a prior conviction for incest, which was properly before the jury, but which involved his daughter. The opinion stressed the fact the jury knew that the daughter, who had testified in that cause where the accused was on trial for the murder of his daughter's husband, was a *child* at the time of the incestuous conduct. There, we held the effect of letting the jury know that the victim of the prior conviction had been a *child* was so prejudicial that it was incurable by an instruction to disregard by the trial court.

I find here, as the Court did in *Walker*, that argument of counsel for the State was "so clearly calculated to inflame the minds of the jurors and was of such character as to suggest the impossibility of withdrawing the impression produced on their minds," and that same constitutes reversible error.[6]

---

5. Attention is also directed to the famous Supreme Court decision of *Berger v. United States*, 295 U.S. 78, 55 S.Ct. 629, 79 L.Ed. 1314 (1935) where Mr. Justice Sutherland discussed the role of the United States Attorney during the trial of a criminal case and his statements

are certainly applicable to a prosecutor in our state.

6. Not only this Court, but other courts, see *United States v. Morris*, 568 F.2d 396 (5th Cir. 1978), are continuously plagued with counsel

A majority of this Court, unfortunately, puts its seal of approval on the above actions of the prosecutor. However, if one reads "the skunk" and then the "striped kitty," as set out above, there should be absolutely no room for doubt what the prosecutor was attempting to do. And yet, a majority of this panel upholds this conviction, admitting all of the while that "The record fails to disclose that there was evidence of these matters produced at trial."

Assuming arguendo, that the first effort of the prosecutor to "inform" the jury that the victim of Carter's previous misconduct had been a "child" was cured by the instruction to disregard, even if there was no basis in fact for this statement, it is clear beyond peradventure that, by arguing that "Johnny" had not spent Christmas with his mother the prosecutor was attempting to place before the jury, indirectly, speculation that what he had been forbidden to draw the jury's attention to directly.

The majority relies in part for its result upon defense counsel's failure to press for a ruling upon the specific issue, i. e., whether evidence existed that "Johnny's" mother was alive at Christmas. While we cannot evaluate from a cold record in what tone and with what expression the court made the remarks quoted, *supra*, it is clear from this record they were made in a facetious and sarcastic vein. This, in itself, may have been prejudicial to appellant, and this Court should never countenance or condone such pettiness no matter how exasperated a trial judge may get. In this case, the trial court, having correctly refused to allow the prosecutor to introduce a "skunk" into the jury box, and having de-scented that "skunk" by an instruction to disregard, promptly allowed the prosecutor, over objection, to introduce a "striped kitty" to the jury. This constitutes reversible error.

The majority has admitted the argument was wrong, but implies that as the jury did not see fit to grant appellant another probation, then he should not complain and the error is harmless. Is two years in the Dallas County jail less than two years probation? See *Lechuga v. State*, 532 S.W.2d 581 (Tex.Cr.App., 1976).

It is not for this Court to speculate whether a jury might have given Carter the maximum sentence had they not been told that the victim in the previous case was a child; it is our duty to recognize that the "information" may have had an effect upon the jury, and we should remand this cause so that appellant may obtain a fair trial to which he is entitled.

The obvious questions raise their heads. Why did the prosecutor inject into this case the age of the victim of the prior conviction in the first place? Why did he persist in his argument, giving the name of the victim a new first name that, in the context used, applies to small children?

A close reading of the majority opinion makes no effort to require prosecutors to adhere to what proper jury argument should be, but in fact solicits prosecutors to see how far they can go in making erroneous jury arguments.

I am sorry to say but I find the actions of the prosecutor, in his jury argument, constitute deliberate prosecutorial misconduct by injecting into the trial harmful and prejudicial facts which were unsworn and not admitted into evidence. I base this upon the fact that nowhere in this record or in the trial court's records is the age of the victim reflected. The prosecutor was free and at liberty, in our adversary system, to strike hard blows, but he was not at liberty to strike foul ones. He crossed the line from permissible jury argument to impermissible jury argument in my view. He struck foul blows in this cause.

for the Sovereign making improper statements in their summations in criminal jury trials. It is the wise prosecutor and defense attorney who subscribe to the admonition that the purpose of summation in jury argument is for the attorney to assist the jury in analyzing, evaluating, and applying the evidence to the law. Likewise, prior to prosecuting a cause, or de-

fending one, counsel for both the State and the defense should read and re-read Volume I, Chapters 3 and 4, of the *American Bar Association's Standards for Criminal Justice*, Second Edition, as I, for one, feel it may eliminate such errors as occurred here and may serve as a condition precedent to the accused receiving a fair trial from both advocates.

Again and in conclusion, as the majority correctly points out, here, unlike *Walker v. State, supra,* there was no evidence in the hands of the prosecutor, let alone before the court or jury, that the victim had been a child.

I would and do hold that, given the probable impact of the "information" on the minds of an average jury, there is a reasonable probability that the jury's assessment of punishment would have been different had the argument not been made, see *Harrington v. California,* 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284 (1969), and I would, therefore, reverse and remand this cause for a new trial.

I respectfully dissent.